[No. 10898.   Department Two.   April 15, 1913.]

ALLESANDRO SPINA, *Plaintiff*, v. ARCADIA ORCHARDS COMPANY, *Defendant and Appellant*, STEPHEN REIDT, *Intervener and Respondent*.[1]

CONTRACTS—PERFORMANCE—DELAY—EXCUSES. Delay in the performance of a contract to clear land is excused where it was due to the superior rights of the owner of the timber, known to the owner of the land, and performance was completed as soon as the owner of the timber would permit.

CONTRACTS—PERFORMANCE—ABANDONMENT—SUBCONTRACTS. A contract to clear land is not abandoned by the letting of a subcontract under which the work provided for in the original contract was completed by the subcontractors.

[1]Reported in 131 Pac. 218.

Appeal from a judgment of the superior court for Spokane county, Grady, J., entered May 31, 1912, upon findings in favor of the intervener, in an action on contract, after a trial to the court.  Affirmed.

*Happy, Cullen, Lee & Hindman,* for appellant.
*J. W. Marshall* and *William S. Lewis,* for respondent.

MAIN, J.—This action was brought by Allesandro Spina, the plaintiff, against the defendant, Arcadia Orchards Company, a corporation.    Stephen Reidt came into the action by complaint in intervention.  After the issues were joined, a settlement took place between Spina and the Orchards Company.  The cause was then tried upon the issues made up by the complaint in intervention, the answer thereto, and the reply.  The complaint in intervention stated a cause of action upon a contract for clearing land.  The cause was tried to the court without a jury.  The material facts are as follows: On June 17, 1910, the Orchards Company entered into a written contract with Reidt, whereby the latter was to clear certain lands which were described in the contract.  The contract, so far as now material, was as follows:

"Party of the second part agrees to vigorously proceed with the clearing of said land, and to completely clear same on or before the 13th day of November, 1910.  All of said clearing to be done in a thorough workmanlike manner.  Payment shall be endorsed upon the face of this contract as same is received by the party of the second part."

From the excerpt quoted, it will be observed that the work was to be completed "on or before the 13th day of November, 1910."  In pursuance of the contract, Reidt went upon the land and began the clearing thereof, with labor and equipment sufficient to have completed the work within the time specified.  At the time the contract was entered into, the Orchards Company did not have title to the standing timber upon the land, but this was then owned by the Standard Lumber Company, a corporation.  This company refused to

allow Reidt and his men to clear the lands until it had finished its logging operations thereon. The Orchards Company, at the time the contract in question was entered into, knew of the lumber company's title to the timber and its right to enter upon the land and remove the same. Reidt did not have actual knowledge of the right of the lumber company. Reidt prosecuted the work of clearing under the contract as rapidly as the lumber company would permit, until November 16, 1910, on which date he entered into a subcontract with Allesandro Spina and Jean Olivets to complete the clearing. Thereafter Spina and Olivets went upon the land and performed the work and labor required under the contract between the Orchards Company and Reidt, as required by the subcontract. The work was completed by them on or about the 15th of September, 1911, and was accepted by the Orchards Company. Upon the completion of the work, the difference between the amount called for by the contract between the Arcadia Orchards Company and Reidt and the sum paid to Reidt and the subcontractor amounted to $801. At the conclusion of the trial, judgment was entered for this amount, together with interest thereon from the 15th day of September, 1911. From this judgment, the Arcadia Orchards Company appeals.

Two questions are presented for determination: (1) Did the failure to complete the work within the time specified in the contract preclude a recovery thereon? and (2) Was there an abandonment of the contract by Reidt?

(1) The failure to perform the contract was due to the conduct of the lumber company, which, as above stated, had a superior right upon the land until it had removed the timber therefrom. This right was known to the Orchards Company when the contract was executed, and it also knew that Reidt was prevented from performing the contract by the action of the lumber company. The evidence shows that the delay was not due to the fault of Reidt. Upon this question, the trial court specifically found:

"That the defendant, Arcadia Orchards Company, knew of the outstanding title of the said lumber company, which was of record in the Auditor's office of Spokane county, Washington, and knew of the claims of the said lumber company and its president to the timber growing upon said lands, and the rights of the said lumber company to have ingress and egress to the lands for the purposes of cutting and removing said timber, and of the acts of said lumber company and its employees in driving the plaintiff in intervention and his men from said lands, and in preventing them from carrying out the said contract.

"(5) That the plaintiff in intervention prosecuted work under said contract from time to time as often as he was able to on account of the acts of the said lumber company and its said agent until on or about the 16th day of November, 1910, when the plaintiff in intervention made and entered into a sub-contract with the plaintiff herein and one Jean Olivets."

These findings are sustained by the evidence. In view of the attendant facts and circumstances, the failure to perform the contract within the time specified does not prevent a recovery thereon.

(2) The second point made by the appellant is that the respondent abandoned the contract. The facts stated show that a subcontract was executed, and that the work provided for in the original contract was completed by the subcontractor. The entering into the subcontract did not constitute an abandonment. A contract is not abandoned when rights under it are transferred to particular persons. In *Watts v. Spencer*, 51 Ore. 262, 94 Pac. 39, it is said: "There is no such thing as abandonment to particular persons or for a consideration."

The judgment will therefore be affirmed.

CROW, C. J., ELLIS, MORRIS, and FULLERTON, JJ., concur.